IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. GRAHAM COMPANY, d/b/a THE GRAHAM COMPANY | : | CIVIL ACTION NO. _____ |
| Plaintiff, | : | |
| v. | : | JURY TRIAL DEMANDED |
| THOMAS P. HAUGHEY, and USI MIDATLANTIC, INC. | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff William A. Graham Company, through its undersigned counsel, files this

action against defendants Thomas P. Haughey and USI MidAtlantic, Inc. (collectively,

"Defendants") and in support thereof alleges as follows:

## PARTIES

1.      Plaintiff William A. Graham Company is a Pennsylvania corporation

doing business as The Graham Company ("Graham" or "Plaintiff"), providing insurance

brokering services with a principal place of business at The Graham Building, One Penn Square

West, Philadelphia, Pennsylvania 19102.

2.      Defendant USI MidAtlantic, Inc. is a Pennsylvania corporation, doing

business as USI MidAtlantic ("USI MidAtlantic") in the business of providing insurance

brokering services with a principal place of business at 1000 Adams Avenue, Suite 200, Trooper,

Pennsylvania 19403.

3.      Defendant Thomas P. Haughey ("Haughey") is an individual residing in

Pennsylvania.

## JURISDICTION AND VENUE

4.      This action alleges claims arising under the Copyright Act of 1976, as well

as state law claims of breach of contract and tortious interference with contractual relations.  This

Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and

over the state law claims pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTS

6.      Plaintiff Graham provides property and casualty insurance brokering

services for businesses throughout the United States.

7.      Haughey became employed by Graham as a Producer on or about January

7, 1985.

## The Standard Proposal

8.      Beginning in a period while Haughey was employed at Graham and

ending in 1994, Graham wrote its "Standard Proposal."  The Standard Proposal is a modular

document used by Graham to explain and summarize proposed insurance protection to

prospective and existing clients in a comprehensive and understandable format.  Portions of the

Standard Proposal are attached as Exhibit 1.

## Haughey's Employment Agreement with The Graham Company

9.      On January 1, 1989, Haughey signed a Producer Employment Agreement

(the "Employment Agreement") with Graham.  A true and correct copy of the Employment

Agreement is attached as Exhibit 2.

10.     Pursuant to a restrictive covenant set forth in Paragraph 3 of the

Employment Agreement, Haughey agreed, for a period of three (3) years after the termination of

his employment, not to directly or indirectly use, divulge, or otherwise disclose any knowledge

2

and/or information concerning and/or respecting the activities, means, or methods of conducting

business and/or the affairs of Graham, which knowledge and/or information Haughey acquired

during his employment, it being his obligation to hold such knowledge and/or information in

trust and in confidence for the sole benefit of Graham.

11.     In connection with the above restrictive covenant and pursuant to

Paragraph 3 of the Employment Agreement, Haughey agreed that the three (3) year period

specified above would cease to run during the continuance of any such violation, and any portion

of the said period remaining at the commencement of any such violation would not begin to run

until said violation was fully and finally cured.

12.     Pursuant to Paragraph 4 of the Employment Agreement, Haughey agreed

that in the course of his employment he might have occasion to have a fiduciary relationship or

status with Graham, and in that relationship, might acquire knowledge and information

concerning or respecting the activities, means, or methods of conducting business and/or the

affairs of Graham of such a confidential, commercially sensitive, or otherwise private nature or

character (collectively, "Fiduciary Knowledge").  Haughey further agreed to hold this Fiduciary

Knowledge in trust and confidence in perpetuity for the sole benefit of Graham, and to never

directly or indirectly use, divulge, or otherwise disclose any such Fiduciary Knowledge.

13.     Pursuant to Paragraph 5 of the Employment Agreement, Haughey agreed

to, at the termination of the Employment Agreement, turn over and deliver to Graham all books,

cards, records, accounts, files, notes, memoranda, lists, and other papers and the information

contained therein or obtained therefrom connected with or arising from or created in the

activities and/or the affairs of Graham (collectively, "Graham Documents") without hesitance or

delay, as well as any notes, memoranda, copies, reproductions, extracts or summations of the Graham Documents.

14.     Pursuant to Paragraphs 3, 4 and 5 of the Employment Agreement, Haughey also agreed that Graham would be entitled to preliminary, permanent, and other injunctive relief against actual or threatened violations of the above provisions, as well as to the recovery of reasonable attorneys' fees in connection therewith.

15.     Pursuant to Paragraphs 3, 4 and 5 of the Employment Agreement, Haughey also agreed that since the exact amount of damage suffered by Graham for a violation of the Employment Agreement may difficult to calculate, he would be liable to Graham in an amount of not less than $20,000 for each violation of the Employment Agreement, unless Graham's calculable damages are proven and awarded in an amount greater than $20,000, in which case he would be liable for the greater amount.

16.     Paragraph 7 of the Employment Agreement specifies that the Employment Agreement is governed by the laws of the Commonwealth of Pennsylvania.

### Haughey's Termination from The Graham Company

17.     On September 11, 1991, Haughey entered into an agreement with Graham terminating his employment therefrom (the "Termination Agreement"). A true and correct copy of the Termination Agreement is attached hereto as Exhibit 3.

18.     Pursuant to the Termination Agreement, Haughey and Graham agreed that Haughey's termination date would be October 10, 1991.

19.     Pursuant to the Termination Agreement, Haughey reaffirmed his continuing obligation to abide by the terms, conditions and restrictions of Paragraphs 3, 4 and 5 of the Employment Agreement.

20.     Pursuant to the Termination Agreement, Haughey and Graham agreed that the three (3) year period described in the Employment Agreement would commence on October 10, 1991.

21.     On September 11, 1991, Haughey entered into an agreement with Graham, agreeing to act as a professional consultant for Graham (the "Consulting Agreement"), commencing October 11, 1991 and ending January 11, 1992 (the "Consulting Period"). A true and correct copy of the Consulting Agreement is attached hereto as Exhibit 4.

22.     In the Consulting Agreement, Haughey reaffirmed his continuing obligation to abide by the terms, conditions and restrictions of Paragraphs 3, 4 and 5 of the Employment Agreement.

23.     While employed at Graham and continuing through the Consulting Period, Haughey had access to portions of the Standard Proposal.

24.     Prior to his termination from Graham and/or during the Consulting Period, Haughey acquired and made reproductions of portions of the Standard Proposal.

25.     Haughey failed to return portions and reproductions of portions of the Standard Proposal to Graham, in violation of Paragraph 5 of the Employment Agreement.

**Haughey's Employment with Flanigan, O'Hara & Gentry**

26.     In approximately November 1991, Haughey became employed with Flanigan, O'Hara & Gentry ("FOG").

27.     On information and belief, while employed at FOG, Haughey repeatedly copied and used portions of the Standard Proposal for proposals to existing and prospective clients without Graham's authorization, and otherwise directly or indirectly used, divulged, or disclosed knowledge and/or information concerning and/or respecting the activities, means, or

methods of conducting business and/or the affairs of Graham, which knowledge and/or information Haughey acquired during his employment, in violation of the Copyright Act of 1976 and Paragraph 3 of the Employment Agreement.

28.     To date Haughey has not cured the above violations of the Employment Agreement.

### Haughey's Employment with USI MidAtlantic

29.     Haughey became employed by USI MidAtlantic as a Vice President during or about 1995.

30.     On information and belief, while employed at USI MidAtlantic, Haughey repeatedly copied and used portions of the Standard Proposal for proposals to existing and prospective clients without Graham's authorization, and otherwise directly or indirectly used, divulged, or disclosed knowledge and/or information concerning and/or respecting the activities, means, or methods of conducting business and/or the affairs of Graham, which knowledge and/or information Haughey acquired during his employment, in violation of the Copyright Act of 1976 and Paragraph 3 of the Employment Agreement.

31.     To date, Haughey has not cured the above violations of the Employment Agreement.

32.     On December 12, 2003, Haughey, while employed at USI MidAtlantic, sent a proposal for Property and Casualty Insurance to Stephen Moss, a controller at Burns & McBride, Inc. (the "Burns Proposal"). A true and correct copy of the Burns Proposal is attached hereto as Exhibit 5.

33.     The Burns Proposal contains language and structure that is substantially similar to material copyrighted in the Standard Proposal, and copied therefrom, in violation of the Copyright Act of 1976 and the Employment Agreement. The specific portions of the Burns

Proposal that have been copied from the Standard Proposal are highlighted in the attached

Exhibit 5.

34.   To date, Haughey has not cured the above violation of the Employment

Agreement.

## CAUSES OF ACTION

### COUNT I
### COPYRIGHT INFRINGMENT IN VIOLATION OF 17 U.S.C. §§ 101 ET SEQ. AGAINST DEFENDANTS HAUGHEY AND USI MIDLANTIC

35.   Graham incorporates the allegations set forth in paragraphs 1-34 as if fully

set forth herein.

36.   During and prior to 1994, Graham created and wrote The Standard

Proposal, a nondramatic literary work authored in the United States.

37.   The Standard Proposal contains material wholly original to Graham that is

copyrightable under the laws of the United States.

38.   In 1995, Graham applied to the Register of Copyrights for a Certificate of

Registration for the Standard Proposal, and received a Certificate of Registration, dated and

identified as follows:  February 21, 1995, No. TX 4-240-145.  A true and correct copy of the

Certificate of Registration is attached as Exhibit 6.

39.   In 2000, Graham applied to the Register of Copyrights for a

Supplementary Registration for the Standard Proposal, and received a Certificate of Registration,

dated and identified as follows:  October 25, 2000, No. TXu 958-442.  A true and correct copy of

the Certificate of Registration is attached as Exhibit 7.

40.   In 2002, Graham applied to the Register of Copyrights for a second

Supplementary Registration for the Standard Proposal, and received a Certificate of Registration,

dated and identified as follows:  March 29, 2002, No. TX 5-569-291.  A true and correct copy of the Certificate of Registration is attached as Exhibit 8.

41.     Graham has duly complied in all respects with the provisions of the Copyright Act of 1976 with regard to the Standard Proposal and has secured all of the exclusive rights and privileges of a copyright holder, including the exclusive right to reproduce, display, and distribute the Standard Proposal and works derived therefrom.

42.     Graham is the sole proprietor of all right, title and interest in and to the copyright in the Standard Proposal.

43.     By and through the actions alleged above, Defendants Haughey and USI MidAtlantic knowingly and willfully copied the Standard Proposal and materials derived therefrom for proposals to existing and prospective clients without Plaintiff's authorization.

44.     Defendants Haughey and USI MidAtlantic copied the Standard Proposal for the specific purpose of infringing Plaintiff's copyright and placing into the public domain illegal and unauthorized copies of the Standard Proposal and materials derived therefrom.

45.     By its actions alleged above, Defendants have infringed and will continue to infringe Plaintiff's copyright in and relating to the Standard Proposal by reproducing, distributing and displaying material that was directly copied from Graham's copyrighted work and materials derived therefrom in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

## COUNT II
## BREACH OF CONTRACT AGAINST DEFENDANT HAUGHEY

46.     Graham incorporates the allegations set forth in paragraphs 1-45 as if fully set forth herein.

47.     The Employment Agreement is a valid and binding agreement between Haughey and Graham.

48.     The Termination Agreement is a valid and binding agreement between Haughey and Graham.

49.     The Consulting Agreement is a valid and binding agreement between Haughey and Graham.

50.     By and through the actions alleged above, Haughey has breached, and continues to breach, Paragraph 3 of the Employment Agreement.

51.     By and through the actions alleged above, Haughey has breached, and continues to breach, Paragraph 4 of the Employment Agreement.

52.     By and through the actions alleged above, Haughey has breached, and continues to breach, Paragraph 5 of the Employment Agreement.

53.     By and through the actions alleged above, Haughey has damaged Graham.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Graham demands judgment in its favor and against Defendants USI MidAtlantic and Haughey as follows:

(a)     an injunction preliminarily and permanently restraining Defendants, their agents, employees and all persons acting in concert with them from engaging in any further acts in violation of the copyright laws and the Employment Agreement;

(b)     requiring Defendants to deliver for impoundment during the pendency of this action and for destruction thereafter all documents containing language from the Standard Proposal and all documents derived therefrom in the possession or control of Defendants;

(c)     requiring Defendants to file with the Court and to serve on Plaintiff a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the Court's order as herein prayed;

(d)     awarding Plaintiff damages resulting from Defendants' infringement of the Standard Proposal and requiring Defendants to account for and pay over to Plaintiff all gains, profits and advantages derived by Defendants from their unlawful conduct or, in the alternative and at Plaintiff's election, awarding Plaintiff statutory damages;

(e)     awarding Plaintiff damages resulting from Haughey's breach of contract and requiring Haughey to account for and pay over to Plaintiff all gains, profits and advantages derived by Haughey from his unlawful conduct;

(f)     awarding Plaintiff punitive damages;

(g)     awarding Plaintiff its costs and reasonable attorneys' fees;

(h)     awarding Plaintiff all such other and further relief as the Court may deem just and proper.

HANGLEY ARONCHICK SEGAL & PUDLIN

Dated: February 8, 2005          By: _____
                                      Henry E. Hockeimer, Jr. (Atty. ID # 86768)
                                      David J. Wolfsohn    (Atty. ID # 57974)
                                      Shawn A. Weede       (Atty. ID # 90402)
                                      Paul W. Kaufman      (Atty. ID # 92805)
                                      One Logan Square, 27th Floor
                                      Philadelphia, PA 19103
                                      (215) 568-6200

                                      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Paul W. Kaufman, hereby certify that on February 8, 2005, I caused Plaintiff's

Complaint to be served via hand delivery on the following:

Jay Irwin, Chief Executive Officer
USI MidAtlantic
1000 Adams Avenue, Suite 200
Trooper, PA 19403

Thomas P. Haughey
USI MidAtlantic
1000 Adams Avenue, Suite 200
Trooper, PA 19403

_____
Paul W. Kaufman

11