## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM A. GRAHAM COMPANY, d/b/a THE GRAHAM COMPANY,     : <br><br>     : <br> Plaintiff,     : <br>     : <br> v.     : <br>     : <br> THOMAS P. HAUGHEY, an individual,     : <br> and USI MIDATLANTIC, INC., a     : <br> corporation,     : <br>     : <br> Defendants.     : <br>     : | CIVIL ACTION NO.  05-cv-612-HB |

### ORDER

AND NOW, this _____ day of July, 2006, upon consideration of Plaintiff's

Motion to Amend Judgment to Include Prejudgment Interest and supporting memorandum of

law, and any opposition filed thereto, it is hereby ORDERED that Plaintiff's motion is

GRANTED.

It is FURTHER ORDERED that the Court's Judgment of June 27, 2006 (Docket

Entry No. 122) will be amended pursuant to Federal Rule of Civil Procedure 59(e) to include (1)

an award of $8,051,266 in prejudgment interest against defendant USI MidAtlantic, Inc., and (2)

an award of $1,116,878 in prejudgment interest against defendant Thomas P. Haughey.  An

appropriate Amended Judgment reflecting this award of prejudgment interest will be entered.

BY THE COURT:

_____
Harvey Bartle III, C.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| WILLIAM A. GRAHAM COMPANY, d/b/a THE GRAHAM COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 05-cv-612-HB |
| | : | |
| THOMAS P. HAUGHEY, an individual, and USI MIDATLANTIC, INC., a corporation, | : | |
| | : | |
| Defendants. | : | |

## AMENDED JUDGMENT

AND NOW, this _____ day of July, 2006, pursuant to Federal Rule of Civil Procedure 59(e), it is hereby ORDERED that the Court's Judgment of June 27, 2006 (Docket Entry No. 122) is hereby amended to the following:

(1)     judgment is entered in favor of the plaintiff William A. Graham Company and against defendant USI MidAtlantic, Inc. in the amount of $24,612,456, said amount reflecting the verdict of $16,561,230 set forth in the answers of the jury to special interrogatories, and $8,051,266 in prejudgment interest; and

(2)     judgment is entered in favor of the plaintiff William A. Graham Company and against defendant Thomas P. Haughey in the amount of $3,414,275, said amount reflecting the verdict of $2,297,397 set forth in the answers of the jury to special interrogatories, and

$1,116,878 in prejudgment interest.

BY THE COURT:

_____
Harvey Bartle III, C.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **WILLIAM A. GRAHAM COMPANY,** d/b/a **THE GRAHAM COMPANY,** | : | |
| **Plaintiff,** | : | |
| v. | : | CIVIL ACTION NO.  05-cv-612-HB |
| **THOMAS P. HAUGHEY, an individual, and USI MIDATLANTIC, INC., a corporation,** | : | |
| **Defendants.** | : | |

## PLAINTIFF'S MOTION TO AMEND
## JUDGMENT TO INCLUDE PREJUDGMENT INTEREST

Plaintiff William A. Graham Company respectfully moves under Federal Rule of Civil Procedure 59(e) for an amendment to the Court's Judgment of June 27, 2006 (Docket Entry No. 122) to include an award of prejudgment interest against defendants USI MidAtlantic, Inc. and Thomas P. Haughey.   The reasons for granting this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

Respectfully submitted,

Dated: June 30, 2006

WOODCOCK WASHBURN LLP

By:     /s/ David J. Wolfsohn
David J. Wolfsohn (Atty. ID # 57974)
Aleksander J. Goranin (Atty. ID # 92452)
Loretta W. Weathers (Atty. ID # 93913)
One Liberty Place, 46th Floor
Philadelphia, PA 19103
(215) 557-5928

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM A. GRAHAM COMPANY,** d/b/a **THE GRAHAM COMPANY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO.  05-cv-612-HB** |
| | : | |
| **THOMAS P. HAUGHEY, an individual,** and **USI MIDATLANTIC, INC., a** corporation, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO AMEND JUDGMENT TO INCLUDE PREJUDGMENT INTEREST**

**INTRODUCTION**

Plaintiff William A. Graham Company (the "Graham Company") respectfully requests

that this Court amend its Judgment of June 27, 2006 (Docket Entry No. 122) to include an award

of prejudgment interest against defendants USI MidAtlantic, Inc. and Thomas P. Haughey.  Such

an interest award is not only supported by numerous Copyright Act decisions, but is also

appropriate on the facts of this case, in which the defendants have stipulated that willful

copyright infringement has been established for purposes of a prejudgment interest award.

Moreover, an award of prejudgment interest would further the important remedial goals of

compensating the Graham Company for the lost value of money resulting from the defendants'

delay in rectifying their copyright infringement, and of ensuring that the defendants' unjust

enrichment from their infringement is disgorged in its entirety.

1

In calculating an appropriate prejudgment interest amount, the Graham Company has relied on a standard and conservative methodology, allocating the total verdict amount to each year of the damages period, and determining the relevant prejudgment interest through use of an average annual prime interest rate, compounded annually. A summary of the calculation and methodology employed is set forth in greater detail in the Declaration of Richard J. Gering, Ph.D., attached as Exhibit A. Based on Dr. Gering's calculation, the Graham Company respectfully asks that this Court, under Federal Rule of Civil Procedure 59(e), amend its Judgment to include an award of prejudgment interest against USI MidAtlantic in the amount of $8,051,226, and against Mr. Haughey in the amount of $1,116,878.

## FACTS AND PROCEDURAL BACKGROUND

A jury trial was held on the Graham Company's copyright infringement claim against the defendants over a five-day period between June 19 and June 26, 2006, at the conclusion of which the jury rendered a verdict in the Graham Company's favor. The jury, through answers to special interrogatories, awarded the Graham Company $16,561,230 in "profits attributable to infringement" under 17 U.S.C. § 504(b) against USI MidAtlantic, and $2,297,397 in "profits attributable to infringement" against Thomas Haughey. (Docket Entry Nos. 120, 121). On June 27, 2006, the Court entered Judgment against both defendants based on the jury's verdict. (Docket Entry No. 122).

The Court's June 27, 2006 Judgment makes no provision for the grant of prejudgment interest on the amounts that the jury awarded. The Court, however, gave leave to the Graham Company to bring this Motion to Amend Judgment under Federal Rule of Civil Procedure 59(e) to seek such prejudgment interest. (Exhibit C attached, Trial Transcript June 27, 2006, at 6:4-9). Additionally, the defendants stipulated, for purposes of the prejudgment interest issue, that their infringement was willful. (Exhibit B attached, Trial Transcript, June 26, 2006, at 4:6-12).

2

## ARGUMENT

**I.     An Award of Prejudgment Interest Would Further Important Remedial Goals of the Copyright Act.**

Prejudgment interest is a well-recognized component of the complete relief to which a successful copyright infringement plaintiff is entitled.  Particularly in the past two decades, numerous appellate and trial courts have supported, and granted, prejudgment interest for violations of the Copyright Act.  Most recently, in *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the Ninth Circuit reaffirmed that prejudgment interest could be awarded under the Copyright Act (even in the absence of an express statutory provision authorizing it), explaining that the prejudgment interest award would "effectuate the legislative purpose of making copyright holders whole and removing incentives for copyright infringement." *Id.* at 717-18.  The Ninth Circuit concluded that the district court erred in holding that prejudgment interest was unavailable for a jury verdict awarding the plaintiff $2.1 million in infringer profits under § 504(b). *See id.* at 705.

Likewise, in *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557 (7th Cir. 2003), the Seventh Circuit upheld a district court's prejudgment interest award on a jury's copyright verdict, noting that "prejudgment interest is presumptively available to victims of federal law violations." *Id.* at 572.  The Tenth Circuit has also spoken directly to the issue, holding in *Kleier Adver., Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036 (10th Cir. 1990), that "prejudgment interest may be awarded on claims for copyright violations." *Id.* at 1040-41.  And while the Second Circuit itself has not fully explored the issue, many district court copyright decisions from that circuit have awarded prejudgment interest.  *See, e.g., TVT Records v. Island Def Jam Music Group*, 279 F. Supp. 2d 366, 409-10 (S.D.N.Y. 2003); *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 891 F. Supp. 935, 945 (S.D.N.Y. 1995); *see also Polar Bear*, 384 F.3d at 718

n.14 (noting that the Southern District of New York "routinely awards prejudgment interest for

§ 504(b) violations"); *see also In re Indep. Serv. Orgs. Antitrust Litig.*, 23 F. Supp. 2d 1242,

1253 (D. Kan. 1998) (granting prejudgment interest on an award of defendant's § 504(b) "profits

attributable to its infringement"); Terence P. Ross, Intellectual Property Law Damages and

Remedies § 9.02[2][b] at 9-16 (Law Journal Press 2006) ("the trend is clearly toward the award

of prejudgment interest for copyright infringement as a matter of course").

The award of prejudgment interest in copyright infringement cases is supported by two

strong policy rationales, based on the fundamental premise that a successful plaintiff is entitled

to complete and effective relief.  First, prejudgment interest compensates the copyright owner for

the lost value of money occasioned by the defendant's delay in remedying its wrongful conduct.

As the Ninth Circuit explained in its *Polar Bear* decision, no other component of Copyright Act

relief (i.e., statutory damages, actual damages, infringer profits, or attorneys' fees) compensates

the plaintiff for this harm:

> Nor does the ability to recover multiple forms of remedies render
> prejudgment interest superfluous.  Frequently, a copyright plaintiff
> can only recover one type of remedy, be it actual damages or
> indirect profits, and the statutory availability of both remedies does
> not mitigate harm caused by delay in making reparations – a harm
> the remedy of prejudgment interest is uniquely tailored to address.
> **Simply put, prejudgment interest is a different remedy for a
> different harm**.

384 F.3d at 718 (emphasis added); *cf. Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874

F.2d 431, 436 (7th Cir. 1989) ("The time has come, we think, to generalize, and to announce a

rule that prejudgment interest should be presumptively available to victims of federal law

violations. . . .  Without it, compensation of the plaintiff is incomplete and the defendant has an

incentive to delay.").

Second, numerous courts have recognized that interest earned on infringer profits is itself a component of the infringer's unjust enrichment that must be disgorged in order to fully effectuate § 504(b)'s purpose. Put another way, prejudgment interest accounts for the improper benefit that a defendant receives from its own use of wrongfully-acquired infringer profits throughout the duration of the damages period; in order to ensure full disgorgement, the defendant must not be allowed to retain this wrongful gain. In its *Frank Music II* opinion – *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545 (9th Cir. 1989) – the Ninth Circuit elaborated on this rationale:

> Awarding prejudgment interest on the apportioned share of defendant's profits is consistent with the purposes underlying the profits remedy. Profits are awarded to the plaintiff not only to compensate for the plaintiff's injury, but also and primarily to prevent the defendant from being unjustly enriched by its infringing use of the plaintiff's property. **For the restitutory purpose of this remedy to be served fully, the defendant generally should be required to turn over to the plaintiff not only the profits made from the use of his property, but also the interest on these profits**, which can well exceed the profits themselves. Indeed, one way to view this interest is as another form of indirect profit accruing from the infringement, which should be turned over to the copyright owner along with other forms of indirect profit.

*Id.* at 1552 (citations omitted) (emphasis added). Since *Frank Music II*, a number of courts have noted, in support of the grant of prejudgment interest on § 504(b) infringer profits awards, the importance of providing full restitutionary relief. *See, e.g.*, *In re Indep. Serv. Orgs.*, 23 F. Supp. 2d at 1253 ("An award of prejudgment interest on CSU's profits is required to prevent CSU from benefiting from its unlawful acts and to deter future infringement."); *TVT Records*, 279 F. Supp. 2d at 410 ("The theory underlying prejudgment interest is not only to fully compensate a copyright owner for the misappropriated value of its property but also to avoid unjust enrichment by defendants").

5

The Third Circuit has not directly addressed the issue of prejudgment interest in copyright infringement cases, although it has stated generally (in a recent ERISA opinion) that "district courts have broad discretion to award prejudgment interest on a judgment obtained pursuant to a federal statute." *Skretvedt v. E.I. du Pont de Nemours*, 372 F.3d 193, 205-206 (3d Cir. 2004). Indeed, the Third Circuit emphasized that "prejudgment interest **should ordinarily be granted** unless exceptional or unusual circumstances exist making the award of interest inequitable." *Skretvedt*, 372 F.3d at 208 (quoting *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992)) (emphasis added).

Finally, prejudgment interest should be presumptively available when a defendant's copyright infringement was willful. *See, e.g., McRoberts*, 392 F.3d at 572-73 (stating, in copyright case, that the Seventh Circuit has "consistently applied the presumption in favor of prejudgment interest for willful violations of federal law"); *Kleier Adver.*, 921 F.2d at 1041 (stating that it would be an abuse of discretion to not award "prejudgment interest where infringement is flagrantly deliberate, as it appears to be in this case"). In this case, the defendants have stipulated for purposes of awarding prejudgment interest that their copyright infringement was willfully done (Exhibit B attached, Trial Transcript, June 26, 2006, at 4:6-12), making a prejudgment interest award presumptively correct.

In light of the compelling remedial rationales for prejudgment interest set forth in copyright cases like *Polar Bear*, *McRoberts*, and *Kleier Advertising*; the general presumption in favor of prejudgment interest awards for violations of federal statutes; and the defendants' stipulated willfulness, this Court has every reason to award the Graham Company prejudgment interest in this case.

II.    **The Graham Company Has Presented a Fair And Practical Method For Calculating the Prejudgment Interest Amount in This Case.**

The award of prejudgment interest, and the manner in which it is calculated, is within the Court's discretion. *See, e.g.*, *Skretvedt v. E.I. du Pont de Nemours*, 372 F.3d 193, 205-206 (3d Cir. 2004); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003) (noting trial court's discretion in copyright infringement context).  The fact that prejudgment interest cannot be calculated with perfect exactitude is no bar to its grant.  Rather, "prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." *Skretvedt*, 372 F.3d at 208 (quoting *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992)).

In this case, the Graham Company seeks $8,051,226 in prejudgment interest against USI MidAtlantic, and $1,116,878 in prejudgment interest against Thomas Haughey.  These amounts were calculated by plaintiff's economic damages expert, Dr. Richard J. Gering, and his methodology is explained at length in his Declaration, attached to this memorandum as Exhibit A.  Dr. Gering employed a standard and conservative methodology in arriving at the final prejudgment interest figures based on several reasonable assumptions: (1) that prejudgment interest would accrue throughout the damages period, and should be calculated after allocating the total verdict amount to the individual years that comprise the damages period; (2) that the appropriate interest rate to apply is the average annual prime rate of interest; and (3) that the allocated yearly verdict amounts and the interest accrued on them should be compounded annually.  As set forth below, each of these assumptions is appropriate and reasonable, and they have yielded a fair and reasonable prejudgment interest calculation that would be appropriate for this Court to adopt.

<u>First</u>, Dr. Gering spread the calculation of prejudgment interest over the entire length of the damages period (January 1, 1992 through June 26, 2006), rather than beginning the calculation at the time the jury "liquidated" the precise amount of infringer profits in its June 27, 2006 verdict. *See* Exhibit A, Gering Decl. at ¶¶ 5-6 & Exh. 1. The fact that Dr. Gering did not await the formal "liquidation" of the award amount at the trial's conclusion but rather began calculating prejudgment interest from the start of the defendants' infringement is certainly not unreasonable. To require otherwise would eliminate the possibility of recovering prejudgment interest in any case where the amount of damages was in dispute – in other words, in nearly all cases. Moreover, the touchstone for a prejudgment interest calculation is <u>not</u> whether the amount of underlying damages is liquidated or unliquidated, but rather whether the prejudgment interest award is necessary to afford the plaintiff full relief and whether there is a fair and practical way of calculating the prejudgment interest amount. The Third Circuit has made this point generally, *see Skretvedt*, 372 F.3d at 208, and the Ninth Circuit has so stated in the specific context of a copyright infringement claim: In *Frank Music II*, the Ninth Circuit noted that "even where damages were not liquidated or readily ascertainable, courts had the power to award prejudgment interest on unliquidated damages when necessary to compensate the plaintiff fairly." 886 F.2d 1545, 1552 (9th Cir. 1989); *accord Miller v. Robertson*, 266 U.S. 243, 257-58 (1924).

Dr. Gering's prejudgment interest calculation represents a fair and practical approach to calculating the relevant interest amounts. *Cf. Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 609 F. Supp. 1325, 1328 (E.D. Pa. 1985) (denying prejudgment interest in part because "plaintiff has suggested no practical way in which such interest could be computed, *i.e.*, upon what amounts and from what dates"). Dr. Gering broke down the total verdict amounts entered against USI MidAtlantic and Thomas Haughey, covering the entire multi-year damages period,

into individual yearly segments (except for the last segment, which covers the tail period of January 1, 2006 through June 26, 2006), and then applied the appropriate interest rate for each individual year to the annualized portion of the total verdict amounts for that year. *See* Exhibit A, Gering Decl. at ¶¶ 5-6 & Exh. 1. Moreover, this allocation by year was not arbitrary, but rather rooted in the actual data of the case: The total verdict amounts were allocated to each individual year in direct proportion to the portion of USI MidAtlantic's total damages period revenues (from matching proposals) that were actually received in that year. *See id.* at ¶ 6 & Exh. 1. In this way, the annual prejudgment interest amount that was calculated for each year of the total damages period represented, to plaintiff's best approximation, only the value to the defendants of the use of wrongful profits received by them during that year.

Second, Dr. Gering assumed that the proper interest rate to apply in calculating the prejudgment interest amounts for each annual segment was the historical average annual prime interest rate for the particular year (as reflected in data kept by the Federal Reserve). *See* Exhibit A, Gering Decl. at ¶ 7 & Exh. 3. The choice of a specific interest rate for a prejudgment interest calculation also rests within the Court's discretion. *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986) ("In federal question cases, the rate of prejudgment interest is committed to the discretion of the district court."); *Kleier Adver., Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1042 n.4 (10th Cir. 1990). A number of courts have employed, for purposes of calculating prejudgment interest on infringement claims, the prime interest rate used by Dr. Gering (or rates that were even several points higher). The district court in *In re Indep. Serv. Orgs. Antitrust Litig.*, 23 F. Supp. 2d 1242 (D. Kan. 1998), for example, based its prejudgment interest calculation for a § 504(b) profits award on the infringer's cost of borrowing, which was the prime rate plus two percent. *See id.* at 1248. Similarly, in a Seventh Circuit trademark

infringement case that Judge Richard Posner used as a vehicle for discussing the calculation of prejudgment interest generally, Judge Posner explained that the prime interest rate should be the rate that is presumptively employed since it is a "readily ascertainable figure" that reasonably accounts for the time value of money, and for the risk of default on the part of the defendant, who is, "in effect a debtor of the plaintiff until the judgment is entered and paid or otherwise collected." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Given this support for the prime rate, it was fair and reasonable for Dr. Gering to employ the historical average annual prime interest rate in his calculations.

Finally, Dr. Gering not only calculated the simple interest for each annual segment of the damages period, but also compounded annually the interest earned on the cumulative verdict amounts and associated prejudgment interest amounts received for prior time periods. *See* Exhibit A, Gering Decl. at ¶¶ 7, 10-12 & Exh. 1. This assumption is an appropriate one because, in any given year of the damages period, the defendants would have earned interest not only on the amount of infringer profits allocated to that year, but also on portions of the verdict amount (and interest thereon) that have been allocated (and thus presumed to have been received by the defendants) in prior years. Compounding takes account of this additional value of use to the defendants. Again, a number of courts have employed compounding in copyright infringement cases. *See, e.g., Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 892 F. Supp. 935, 944 (S.D.N.Y. 1995); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996); *see also* Terence P. Ross, Intellectual Property Law Damages and Remedies § 9.02[2][c] at 9-18 (Law Journal Press 2006) ("In the ordinary case, some form of compounding should be applied.").

10

In sum, the calculation set forth and explained by Dr. Gering in his attached Declaration represents a fair and practical approach, based on reasonable assumptions and supported by legal authority, to determining the amount of prejudgment interest to be awarded on the jury's verdict. Accordingly, this Court should, respectfully, adopt Dr. Gering's methodology and amend its June 27, 2006 Judgment to award $8,051,226 in prejudgment interest against USI MidAtlantic, and $1,116,878 in prejudgment interest against Thomas P. Haughey.

## **CONCLUSION**

For the reasons set forth above, the Plaintiff's Motion to Amend Judgment to Include Prejudgment Interest should be granted.

Respectfully submitted,

Dated: June 30, 2006                    WOODCOCK WASHBURN LLP

By:      /s/ David J. Wolfsohn
          David J. Wolfsohn (Atty. ID # 57974)
          Aleksander J. Goranin (Atty. ID # 92452)
          Loretta W. Weathers (Atty. ID # 93913)
          One Liberty Place, 46th Floor
          Philadelphia, PA 19103
          (215) 557-5928

          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, a true and correct copy of the foregoing Plaintiff's

Motion to Amend Judgment to Include Prejudgment Interest, was served on the following by

hand delivery:

> Thomas E. Zemaitis, Esquire
> Pepper Hamilton, LLP
> 3000 Two Logan Square
> 18th and Arch Streets
> Philadelphia, PA  19103-2799
>
> Attorney for Defendants

> _____/s/ David J. Wolfsohn_____
> David J. Wolfsohn

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **WILLIAM A. GRAHAM COMPANY,** | : | **CIVIL ACTION NO.  05-cv-612-HB** |
| **d/b/a THE GRAHAM COMPANY,** | : |  |
|  | : |  |
| **Plaintiff,** | : |  |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **THOMAS P. HAUGHEY, an individual,** | : |  |
| **and USI MIDATLANTIC, INC., a** | : |  |
| **corporation,** | : |  |
|  | : |  |
| **Defendants.** | : |  |

## DECLARATION OF RICHARD J. GERING, Ph.D.
## IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND
## JUDGMENT TO ADD PREJUDGMENT INTEREST

1.      I am a principal with Parente Randolph, LLC's Forensic & Litigation Services Department, and hold a Ph.D. in Economics.  I have been retained by counsel for Plaintiff William A. Graham Company ("Graham Company") as an expert witness on economic damages in the above-captioned case, and I testified at trial, on June 21, 2006, on the subject of the Graham Company's economic damages.

2.      I have been asked by the Graham Company to calculate the amount of pre-judgment interest that would be owed on the amount of "profits attributable to the infringement" awarded under 17 U.S.C. § 504(b) against defendant USI MidAtlantic, Inc. ("USI MidAtlantic") and defendant Thomas P. Haughey ("Haughey").

3.      I understand that on June 27, 2006, the Court entered judgment, based upon the answers of the jury to special interrogatories, against defendant USI MidAtlantic in the amount of $16,561,230, and against defendant Haughey in the amount of $2,297,397.  I have separately calculated the prejudgment interest that would be owed on each of these two awards.

4.      According to my calculations, the amount of prejudgment interest on the $16,561,230 award against USI MidAtlantic is **$8,051,226**, and the amount of prejudgment interest on the $2,297,397 award against Haughey is **$1,116,878**.  A summary of my calculations is attached to this declaration as Exhibit 1.  I explain my assumptions and methodology in greater detail below.

5.      I began my calculations by assigning to each year in the total damages period (January 1, 1992 through June 26, 2006), a Weighting Factor based on the portion of USI MidAtlantic's total revenue (connected to matching proposals) received during the entire damages period that was actually received in each specific year.  For instance, according to my calculations, USI MidAtlantic earned a total of $31,830,914 over the full damages period in revenues connected to matching proposals (*see* Plaintiff's Exhibit 88A, attached to this declaration as Exhibit 2), of which $385,714 was earned in the first year of the period, the year ending December 31, 1992.  Thus, as reflected in the attached Exhibit 1, the Weighting Factor for the year ending December 31, 1992 was 1.21% (or $385,714 divided by $31,830,914), indicating that 1.21% of USI MidAtlantic's total damages period revenues was earned in the 1992 year.  I did this calculation for each year in the full damages period, with the final time segment extending only to June 26, 2006.  (For simplicity's sake, however, I will refer to each segment of the total damages period as a year).

6.      Next, I applied, for USI MidAtlantic and Haughey separately, each year's Weighting Factor to the total amount of the judgment entered against the defendant, to arrive at a Weighted Verdict Amount for each year.  For example, as indicated in the USI MidAtlantic calculation summary included in the attached Exhibit 1, the Weighted Verdict Amount for the year ending December 31, 1992 (based on a weighting factor of 1.21%) was $200,682.  In this

way, I allocated to each year of the total damages period a portion of the total judgment award that is directly proportional to the portion of total revenues (connected to matching proposals) received by USI MidAtlantic in that year.

7.     For each year in the damages period, I then calculated the Annual Pre-Judgment Interest amount by multiplying the Weighted Verdict Amount by the average annual Prime Interest Rate for that year, compounded annually.  I obtained the average annual Prime Interest Rate for the relevant years from data compiled and maintained by the Federal Reserve, and available online at <www.federalreserve.gov>.  A copy of the source page for the prime interest rates used in my pre-judgment interest calculation is attached as Exhibit 3.

8.     In calculating the amount of each year's Annual Pre-judgment Interest, I used a standard mid-year convention that assumes that the revenues (and hence the corresponding Weighted Verdict Amount) were received evenly throughout the year.  An assumption that the annual Weighted Verdict Amounts would be all received at year-end would tend to understate pre-judgment interest because it would assume that no interest on that amount would be earned at any point during the year before year-end.  An assumption that the annual Weighted Verdict Amounts would be all received at the beginning of the year would tend to overstate pre-judgment interest because it would assume that interest would be earned on the entire amount from the first day of the year through the last day.  The mid-year convention assumes that each year's Weighted Verdict Amount was received halfway through the year.

9.     Mathematically, I implemented the mid-year convention by first dividing each year's Weighted Verdict Amount by two, and then applying the annual average Prime Interest Rate for that year to this divided amount.  For example, for the first year of the damages period, the year ending December 31, 1992, I applied the mid-year convention by dividing the Weighted

Verdict Amount of $200,682 by two, to arrive at an amount of $100,341.  I then multiplied this

reduced figure by the Prime Interest Rate for that year (6.25%), and obtained, for the 1992 year,

an Annual Pre-Judgment Interest amount of $6,271.  This figure appears in the USI MidAtlantic

calculation summary included in the attached Exhibit 1 in the column headed "Annual Pre-

Judgment Interest" for the row titled "Year End December 31, 1992."

      10.    As stated above, I also compounded on an annual basis the interest and verdict

amount allocations received.  Thus, for each subsequent year following the year ending

December 31, 1992, I not only applied the relevant yearly Prime Interest Rate to the yearly

Weighted Verdict Amount (on the assumption, again using the mid-year convention, that that

year's allocated portion of the verdict would be received at the half-way point of the year), but

also applied the Prime Interest Rate to the cumulative verdict amounts and pre-judgment interest

amounts received for the <u>preceding</u> years.  This is because these cumulative amounts, on the

assumption that they would have been received by the Graham Company in the preceding years,

would also be entitled to earn interest.

      11.    For these cumulative amounts, I did not employ a mid-year convention, because

the Graham Company would necessarily have use of these cumulative amounts from preceding

years as of the first day of each subsequent annual period, and should be earning interest on those

cumulative amounts from that time forward.  For example, for the second annual segment of the

total damages period, the year ending December 31, 1993, I applied the 6.00% prime interest rate

for that period to the sum of the cumulative verdict amount from the preceding year-end 1992

($200,682) and the cumulative pre-judgment interest amount from the preceding period ($6,271),

arriving at a figure of $12,417.18.  Additionally, to account for the portion of the total verdict

amount assumed to have been received during the 1993 year, I also applied the 6.00% interest

rate to the year-end 1993 Weighted Verdict Amount as reduced under the mid-year convention (i.e., the Weighted Verdict Amount of $301,023 divided by two, or $150,511.50), arriving at a figure of $9,030.69.

12.     The sum of $9,030.69 (accounting for the interest on the portion of the total verdict assumed to have been received in 1993) and $12,417.18 (accounting for the compounding of the portions of the verdict amount and pre-judgment interest received in prior years) appears in the USI MidAtlantic calculation summary included in the attached Exhibit 1, as the $21,448 figure entered for the Annual Pre-Judgment Interest for the 1993 year.

13.     I repeated this calculation, for defendant USI MidAtlantic and defendant Haughey separately, for each of the remaining time periods in the total damages period.  For defendant USI MidAtlantic, the sum of the Annual Pre-judgment Interest amounts, calculated using the methodology summarized above, totaled $8,051,226.  For defendant Haughey, the sum totaled $1,116,878.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 30, 2006.

Richard J. Gering

# EXHIBIT 1

Exhibit 1

## USI MidAtlantic, Inc. Pre-Judgment Interest Calculation

**INPUTS:**

Verdict Amount for USI MidAtlantic, Inc.   | $16,561,230 |

Pre-Judgment Interest Rate   | **Average Yearly Prime Interest Rates** |

**CALCULATION:**

| | | | | | Pre-Judgment Interest | |
| Year End | Prime Interest Rate | Weighting Factor | Weighted Verdict Amount | Cumulative Verdict Amounts | Annual | Cumulative |
|---|---|---|---|---|---|---|
| December 31, 1992 | 6.25% | 1.21% | $200,682 | $ 200,682 | $6,271 | $6,271 |
| December 31, 1993 | 6.00% | 1.82% | 301,023 | 501,706 | 21,448 | 27,719 |
| December 31, 1994 | 7.15% | 3.27% | 541,240 | 1,042,945 | 57,203 | 84,922 |
| December 31, 1995 | 8.83% | 4.80% | 795,655 | 1,838,600 | 134,719 | 219,641 |
| December 31, 1996 | 8.27% | 7.60% | 1,259,360 | 3,097,960 | 222,291 | 441,932 |
| December 31, 1997 | 8.44% | 8.96% | 1,484,510 | 4,582,470 | 361,413 | 803,345 |
| December 31, 1998 | 8.35% | 7.97% | 1,320,129 | 5,902,599 | 504,831 | 1,308,176 |
| December 31, 1999 | 8.00% | 7.62% | 1,262,161 | 7,164,759 | 627,348 | 1,935,524 |
| December 31, 2000 | 9.23% | 9.48% | 1,569,365 | 8,734,124 | 912,382 | 2,847,906 |
| December 31, 2001 | 6.91% | 10.77% | 1,782,820 | 10,516,945 | 861,915 | 3,709,821 |
| December 31, 2002 | 4.67% | 9.57% | 1,584,225 | 12,101,170 | 701,382 | 4,411,203 |
| December 31, 2003 | 4.12% | 9.83% | 1,628,060 | 13,729,230 | 713,848 | 5,125,051 |
| December 31, 2004 | 4.34% | 9.87% | 1,634,157 | 15,363,387 | 853,737 | 5,978,788 |
| December 31, 2005 | 6.19% | 6.84% | 1,132,280 | 16,495,668 | 1,356,125 | 7,334,913 |
| June 26, 2006 | 6.19% | 0.40% | 65,562 | 16,561,230 | 716,313 | 8,051,226 |
| **Total** | | 100% | **$16,561,230** | | **$8,051,226** | |

**ANSWER:**

| | |
|---|---|
| Verdict Amount for USI MidAtlantic, Inc. | $16,561,230 |
| Pre-Judgment Interest | 8,051,226 |
| **Verdict and Pre-Judgment Interest** | **$24,612,456** |

Notes:

Based on a mid-year convention which assumes that the revenues are evenly distributed throughout each year.

Interest rate is the average prime interest rate for each year, compounded annually.

Weighting factor assumes that the verdict amount is distributed over the entire damage period (January 1, 1992 to June 26, 2006)
in the same manner as the actual revenues that were earned by USI on the 857 proposals (PX-88a) over that time period.

Exhibit 1

### Thomas P. Haughey Pre-Judgment Interest Calculation

**INPUTS:**

| | |
|---|---|
| Verdict Amount for Thomas P. Haughey | $2,297,397 |
| Pre-Judgment Interest Rate | **Average Yearly Prime Interest Rates** |

**CALCULATION:**

| | | | | | Pre-Judgment Interest | |
|---|---|---|---|---|---|---|
| Year End | Prime Interest Rate | Weighting Factor | Weighted Verdict Amount | Cumulative Verdict Amounts | Annual | Cumulative |
| December 31, 1992 | 6.25% | 1.21% | $27,839 | $ 27,839 | $870 | $870 |
| December 31, 1993 | 6.00% | 1.82% | 41,758 | 69,597 | 2,975 | 3,845 |
| December 31, 1994 | 7.15% | 3.27% | 75,082 | 144,679 | 7,935 | 11,780 |
| December 31, 1995 | 8.83% | 4.80% | 110,374 | 255,053 | 18,688 | 30,468 |
| December 31, 1996 | 8.27% | 7.60% | 174,700 | 429,753 | 30,836 | 61,304 |
| December 31, 1997 | 8.44% | 8.96% | 205,933 | 635,687 | 50,136 | 111,440 |
| December 31, 1998 | 8.35% | 7.97% | 183,130 | 818,817 | 70,031 | 181,471 |
| December 31, 1999 | 8.00% | 7.62% | 175,089 | 993,905 | 87,027 | 268,498 |
| December 31, 2000 | 9.23% | 9.48% | 217,705 | 1,211,610 | 126,567 | 395,065 |
| December 31, 2001 | 6.91% | 10.77% | 247,315 | 1,458,925 | 119,566 | 514,631 |
| December 31, 2002 | 4.67% | 9.57% | 219,766 | 1,678,691 | 97,297 | 611,928 |
| December 31, 2003 | 4.12% | 9.83% | 225,847 | 1,904,538 | 99,026 | 710,954 |
| December 31, 2004 | 4.34% | 9.87% | 226,693 | 2,131,231 | 118,432 | 829,386 |
| December 31, 2005 | 6.19% | 6.84% | 157,071 | 2,288,302 | 188,124 | 1,017,510 |
| June 26, 2006 | 6.19% | 0.40% | 9,095 | 2,297,397 | 99,368 | 1,116,878 |
| **Total** | | 100% | **$2,297,397** | | **$1,116,878** | |

**ANSWER:**

| | |
|---|---|
| Verdict Amount for Thomas P. Haughey | $2,297,397 |
| Pre-Judgment Interest | 1,116,878 |
| **Verdict and Pre-Judgment Interest** | **$3,414,275** |

Notes:

Based on a mid-year convention which assumes that the revenues are evenly distributed throughout each year.

Interest rate is the average prime interest rate for each year, compounded annually.

Weighting factor assumes that the verdict amount is distributed over the entire damage period (January 1, 1992 to June 26, 2006) in the same manner as the actual revenues that were earned by USI on the 857 proposals (PX-88a) over that time period.

# EXHIBIT 2

PX-88a
# Revenue From Customers Who Received Certain Matching Proposals

| Producers | Customers | Proposals | Matches | Total Revenue[1] |
|---|---|---|---|---|
| **Matches of Not-Sent Sections + Partially-Sent Sections** | | | | |
| Thomas P. Haughey | 75 | 245 | 1,731 | $ 12,252,782 |
| Other Producers | 240 | 612 | 3,227 | 19,578,132 |
| **Total** | **315** | **857** | **4,958** | **$ 31,830,914** |

**Notes:**

[1] Total revenue includes $4,281,428 of estimated Haughey and $5,212,816 of estimated Other Producer revenue.



TRIAL EXHIBIT
PX-88A
CA 05-0612

**Page 1 of 1**

# EXHIBIT 3

```
,Instrument,"Bank prime loan"
,Maturity,"Not applicable"
,Frequency,"Annual"
,Description,"Average majority prime rate charged by banks on short-term loans to
,Note,"Weekly figures are averages of 7 calendar days ending on Wednesday of the c
,Note,"Annualized using a 360-day year or bank interest."
,Note,"Rate posted by a majority of top 25 (by assets in domestic offices) insured
```

```
DATE        , PRIMENA
1956, 3.77
1957, 4.20
1958, 3.83
1959, 4.48
1960, 4.82
1961, 4.50
1962, 4.50
1963, 4.50
1964, 4.50
1965, 4.54
1966, 5.63
1967, 5.63
1968, 6.31
1969, 7.96
1970, 7.91
1971, 5.73
1972, 5.25
1973, 8.03
1974, 10.81
1975, 7.86
1976, 6.84
1977, 6.83
1978, 9.06
1979, 12.67
1980, 15.26
1981, 18.87
1982, 14.85
1983, 10.79
1984, 12.04
1985, 9.93
1986, 8.33
1987, 8.21
1988, 9.32
1989, 10.87
1990, 10.01
1991, 8.46
1992, 6.25
1993, 6.00
1994, 7.15
1995, 8.83
1996, 8.27
1997, 8.44
1998, 8.35
1999, 8.00
2000, 9.23
2001, 6.91
2002, 4.67
2003, 4.12
2004, 4.34
2005, 6.19
```

\* Used for Pre-Judgment Interest Calculation

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

WILLIAM A. GRAHAM          : CIVIL ACTION NO. 05-612
COMPANY,doing business     :
as THE GRAHAM COMPANY,     :
                           :
            Plaintiff      :
                           :
                           :
                           :
        v                  :
                           :
                           :
                           :
                           :
THOMAS P. HAUGHEY, USI      :
MIDATLANTIC, INC., et al,  : Philadelphia, Pennsylvania
                           : June 26, 2006
            Defendants     : 9:20 a.m.

- - -

JURY TRIAL - DAY FIVE
BEFORE THE HONORABLE CHIEF JUDGE HARVEY BARTLE
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiff:    DAVID J. WOLFSOHN, ESQUIRE
                      ALEKSANDER J. GORANIN, ESQUIRE
                      CHAD E. ZIEGLER, ESQUIRE
                      Woodcock Washburn, LLP
                      One Liberty Place
                      46th Floor
                      Philadelphia, PA  19103

                      HENRY E. HOCKEIMER, JR., ESQUIRE
                      SHAWN A. WEEDE, ESQUIRE
                      Ballard Spahr Andrews
                      and Ingersoll LLP
                      1735 Market Street
                      51st Floor
                      Philadelphia, PA  19103

1        contact claim against Mr. Haughey.   Thank you, Your

2        Honor.

3                THE COURT:   Thank you.   All right.   Mr.

4        Zemaitis, you have certain things that you need to put

5        on the record, also in light of our discussions.

6                MR. ZEMAITIS:   Yes, Your Honor.   This is a

7        stipulation.   "To the extent that wilfulness is

8        relevant to an award of prejudgment interest, the

9        defendants stipulate that the infringement in this

10       action was wilful."

11               This stipulation is solely for purposes of

12       that issue, Your Honor.

13               THE COURT:   Okay.   Fine.   Thank you.

14       Also still pending are the Rule 50 motions, and the

15       Court denies without prejudice the parties motions

16       under Rule 50 for judgment as a matter of law.   They

17       are, of course, subject to renewal after a jury

18       verdict.

19               Thank you very much.   We will resume at

20       9:30.

21               ALL:   Thank you, Your Honor.

22               THE COURT:   Okay.

23               (Recess, 9:21 a.m. to 9:34 a.m.)

24               THE COURT:   Good morning.   You may be

25       seated.   Mr. Wolfsohn, you may make your closing on

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

WILLIAM A. GRAHAM          : CIVIL ACTION NO. 05-612
COMPANY,doing business     :
as THE GRAHAM COMPANY,     :
                           :
            Plaintiff      :
                           :
                           :
                           :
        v                  :
                           :
                           :
                           :
                           :
THOMAS P. HAUGHEY, USI      :
MIDATLANTIC, INC., et al,   : Philadelphia, Pennsylvania
                           : June 27, 2006
            Defendants     : 10:00 a.m.

- - -

JURY TRIAL - DAY TWO
BEFORE THE HONORABLE CHIEF JUDGE HARVEY BARTLE
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiff:    DAVID J. WOLFSOHN, ESQUIRE
                      ALEKSANDER J. GORANIN, ESQUIRE
                      CHAD E. ZIEGLER, ESQUIRE
                      Woodcock Washburn, LLP
                      One Liberty Place
                      46th Floor
                      Philadelphia, PA  19103


                      HENRY E. HOCKEIMER, JR., ESQUIRE
                      SHAWN A. WEEDE, ESQUIRE
                      Ballard Spahr Andrews
                      and Ingersoll LLP
                      1735 Market Street
                      51st Floor
                      Philadelphia, PA  19103

1          for just a moment.

2                     MR. ZEMAITIS:   Sure.

3                     (Recess, 10:08 a.m. to 10:12 a.m.)

4                     THE COURT:   What I am going to do is enter

5          judgment on the verdict and the issue of prejudgment

6          issues -- interest will have to wait another day.   You

7          can file and do whatever you want to amend the

8          judgment, but I think it is important to get the

9          judgment on the docket promptly.

10                    MR. WOLFSOHN:   Good, Your Honor.

11                    THE COURT:   All right.   Thank you very

12         much.

13                    MR. ZEMAITIS:   Thank you, Your Honor.

14                    MR. WOLFSOHN:   Thank you, Your Honor.

15                    (Proceeding concluded at 10:12 a.m.)

16                                    *  *  *