```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM A. GRAHAM COMPANY       :      CIVIL ACTION
                                :
          v.                    :
                                :
THOMAS P. HAUGHEY, et al.       :      NO. 05-612
```

MEMORANDUM

Bartle, C.J.                                        November 6, 2007

Plaintiff William A. Graham Company ("Graham"), an insurance brokerage firm, sued defendants Thomas P. Haughey, a former Graham employee, and USI Midatlantic, Inc. ("USI"), another insurance brokerage firm and Haughey's current employer, for infringing its copyrights in its "Standard Survey and Analysis" and "Standard Proposal," collectively known as the "Works." 17 U.S.C. § 101, *et seq*. These materials were used to put together documents supplied to prospective and current clients to explain the insurance coverage that defendants were attempting to place. After a five day trial, the jury returned a verdict in Graham's favor and awarded damages in the amount of $16,561,230 against defendant USI and $2,297,397 against defendant Haughey. Thereafter, the court granted defendants' motion for a new trial on the applicability of the statute of limitations and on damages, and then granted defendants' subsequent motion for partial summary judgment insofar as Graham sought damages outside the three year statute of limitations. 17 U.S.C. § 507(b).

Now pending before the court is plaintiff's motion concerning the proper scope of jury issues and trial presentations for the second trial on damages. Graham argues that the Seventh Amendment to the United States Constitution and fundamental fairness concerns limit what damage issues the parties may present to the jury during the second damages trial.

The damages awarded by the jury represented defendants' profits from acts of infringement for a fourteen year period going back to 1992. 17 U.S.C. §§ 501, 504. Upon consideration of defendants' post-trial motions, we granted a new trial because the jury's negative answer to the following special interrogatory was against the weight of the evidence: "Prior to February 9, 2002, should plaintiff have discovered, with the exercise of reasonable diligence, that defendants were infringing its copyrights?" William A. Graham Co. v. Haughey, 2006 WL 3386672 (E.D. Pa. Nov. 21, 2006). The court further stated that "[b]ecause the amount of damages is inextricably bound up with the question of the application of the statute of limitations, we also will grant a new trial as to damages." Id. at *11.

Thereafter, defendants filed a motion for partial summary judgment based on a statute of limitations defense. Defendants contended that any damages outside the three-year period prior to the filing of the complaint were time barred. We agreed. We held that "[t]he three year statute of limitations set forth in the Copyright Act bars all of Graham's claims against defendants that accrued prior to February 9, 2002.

Graham, of course, will still be able to recover defendants' profits arising from acts of infringement occurring on or after that date." William A. Graham, Co. v. Haughey, 484 F. Supp. 2d 324, 336-37 (2007), citing 17 U.S.C. § 504. We also determined that the measure of damages to which Graham was entitled could not be resolved on the current record and would have to be established by a second jury. Id.

Where, as here, the copyright owner seeks the infringer's profits as damages, those damages are to be calculated using the three components described in § 504(b) of the Copyright Act, 17 U.S.C. § 101, *et seq*. First, the copyright owner must present proof of the infringer's gross revenue. Id. This includes not only an infringer's direct profits, which are those generated from the sale of an infringing product itself, but also its indirect profits, which have a more attenuated connection to the infringement. Mackie v. Rieser, 296 F.3d 909, 914 (9th Cir. 2002). The burden then shifts to the infringer to prove not only any "deductible expenses" associated with generating that revenue, but also "elements of profit attributable to factors other than the copyrighted work," commonly known as the "apportionment" of profits. 17 U.S.C. § 504(b).

At the first trial, evidence as to each of these three damage components was presented to the jury. Graham offered a calculation of the defendants' gross revenue primarily through the expert testimony of Dr. Richard Gering. Dr. Gering

calculated the revenue USI obtained when clients bought insurance after receiving written proposals with language that matched the copyright protected language of the Works. The revenue figure presented as to defendant Haughey represented his commissions from USI for each of the infringing proposals he presented to a client.

Defendant USI then introduced evidence as to its deductible expenses. It sought a flat 25% reduction in the gross revenue figured presented by Graham, which represents the commissions paid to their respective producers, including Haughey, from each of the infringing proposals. Haughey did not claim any deductible expenses against his gross revenue. Defendants also offered evidence as to the apportionment of profits. Specifically, they introduced testimony that the infringing language in insurance proposals provided to their clients and prospective clients was not important in the sale of insurance and thus was not an important source of their gross revenue. During closing arguments, defendants further suggested that the gross revenues should be reduced, either because certain proposals only contained a very small amount of infringing language or because some of their clients were repeat customers who merely renewed pre-existing insurance coverage.

No party disputes that the second jury will consider the first component of § 504(b) damages, that is, the defendants' gross revenue derived from the infringing proposals during the period now in issue. At this point, the relevant revenue period

has shrunk from fourteen years to three years.  Additionally, defendants have stated that the only deductible expense to be introduced is a flat 25% of USI's total gross revenue, which is the same as was introduced at the prior trial.  The present dispute centers on the final element of the damage calculation, the apportionment of profits between those attributable to the copyrighted Works and those not attributable.  Graham argues that the second jury should not be permitted to make an independent calculation on the apportionment of defendants' profits, that is, on the percentage of defendants' profit attributable to factors other than the copyrighted Works.

> Graham maintains that the findings of the first jury on the apportionment percentages are binding on the second jury and the court under the Reexamination Clause of the Seventh Amendment to the Constitution.  The Seventh Amendment states that:  "In Suits at common law ... the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."  U.S. CONST. amend VII.  As explained in In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1303 (7th Cir. 1995), "[t]he right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact."

Our Court of Appeals has explained the second clause of the Seventh Amendment as follows: "We understand this language to operate as a guarantee of the integrity of the judicial process generally and as a check on the powers of the trial judge specifically." Davis v. Omitowoju, 883 F.2d 1155, 1162-63 (3d Cir. 1989). Thus, a court can vacate a jury's verdict and submit the same issue to a second jury "only where the great weight of the evidence cuts against the verdict and where a miscarriage of justice would result if the verdict were to stand." Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006) (citations omitted). Consistent with the Seventh Amendment, when serious error was present during a trial, Rule 59 of the Federal Rules of Civil Procedure authorizes a court to grant a new trial and vacate the first jury's verdict. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432-33 (1996). We concluded that such error had occurred to the extent that the jury calculated damages beyond the three-year period prior to the filing of the complaint. Graham, 2006 WL 3386672; Graham, 484 F. Supp. 2d 324.

The first jury was instructed as to each of the three components involved in a § 504(b) damages analysis. After the jury found that defendants had infringed plaintiff's copyright in the Works, the jury was asked: "What is the total amount of each defendant's 'profits attributable to infringement,' if any, that each defendant earned before and after February 9, 2002?" The jury answered by awarding damages in the amount of $16,561,230 against defendant USI and $2,297,397 against defendant Haughey.

The parties did not request and the jury was not asked to delineate the three elements which made up its computation of § 504(b) damages.  Instead, the jury reported only the final figure against each defendant after making the required calculations.  The damages awarded against USI amounted to 69.4% of USI's net profit, that is, 69.4% of USI's gross revenue for the fourteen year period after deducting 25% in deductible expenses.  The award against Haughey came to 75% of his net profit.  In other words, the jury apportioned 30.6% of USI's net profit and 25% of Haughey's net profit to factors other than the defendants' infringing use of Graham's copyrighted materials.  The damages amounted to 70% of defendants' combined profits.

  In order to consider whether the second jury would be bound by the first jury's apportionment percentages for USI and Haughey, we would first have to be able to discern exactly what the first jury decided with respect to apportionment for the three years of damages now in issue.  That, however, is impossible to ascertain.  All we know is that the jury found 69.4% of USI's profit after expenses were attributable to acts of infringement and that the number was 75% for Haughey.  We can calculate these percentages by totaling each defendant's gross revenue for a fourteen year period, subtracting 25% of that total for the deductible expenses for USI, and dividing the results into the damages awarded against each of the defendants.  However, we have no idea whether the first jury applied these same percentages to each of the fourteen years then in issue or

-7-

whether these percentages were merely averages for all those years.  Only if the former were the case would the percentages Graham urges upon us have any validity.  We do not know which fork in the road the jury took.  If we adopted Graham's approach, we would simply be speculating that the percentages of profit attributable to factors other than the copyright works were exactly the same in each of the three years now in issue and in each of the other eleven years no longer in issue.[1]  See 17 U.S.C. § 504(b).

Absent any way to determine how the first jury computed its ultimate damage findings recorded on the verdict sheet, we have no basis to reach the conclusion Graham advocates.  We have no alternative but to submit to the second jury the matter of apportionment along with the matters of gross revenues and deductible expenses.

Accordingly, we will deny Graham's pending motion concerning the proper scope of jury issues and trial presentations for the second damages trial.

---

1. The propriety of Graham's request of the court is further undermined by the fact that Graham never identifies precisely what it understands the first jury's finding as to apportionment to be.  Graham fails to specify whether the second jury should be bound by the percentage awarded by the first jury as to each of the defendants individually, or as to a percentage award of the defendants' combined profits.  As to this question, Graham simply states that it is "logical and reasonable ... to conclude that the jury apportioned in percentage terms, and arrived at a 70% apportionment factor (75% for Mr. Haughey and 69.4% for USI MidAtlantic).

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM A. GRAHAM COMPANY      :      CIVIL ACTION
                               :
          v.                   :
                               :
THOMAS P. HAUGHEY, et al.      :      NO. 05-612
```

ORDER

AND NOW, this 6th day of November, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of plaintiff William A. Graham, Company concerning the proper scope of jury issues and trial presentations for the second damages trial is DENIED.

BY THE COURT:

/s/ Harvey Bartle III
C.J.