IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. GRAHAM COMPANY, d/b/a THE GRAHAM COMPANY | : | CIVIL ACTION |
| v. | : | |
| THOMAS P. HAUGHEY AND USI MIDATLANTIC, INC. | : | NO. 05-612 |

MEMORANDUM

Bartle, C.J. March 19, 2010

This copyright infringement action[1] is on remand from the Court of Appeals for a decision on certain of defendants' post trial motions.

In June, 2006, the jury returned a verdict in favor of the plaintiff, William A. Graham Company d/b/a The Graham Company ("Graham"), and against the defendants, USI MidAtlantic, Inc. ("USI") and Thomas P. Haughey, in the amount of $16,561,230, and $2,297,397, respectively. Thereafter, defendants filed a "renewed motion for judgment as a matter of law, or, in the alternative, for a new trial." In November, 2006, we denied the motion for judgment as a matter of law but granted the motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure with respect to issues related to the statute of limitations and damages. William A. Graham Co. v. Haughey, No. 05-612, 2006 WL 3386672, at *15 (E.D. Pa. Nov. 21, 2006) ("Graham I"). We held

---

1. The complaint also contained a claim for breach of contract. The plaintiff withdrew this claim during trial.

that it was against the great weight of the evidence for the jury to have answered "no" to Special Jury Interrogatory No. 2, which asked: "Prior to February 9, 2002, should plaintiff have discovered, with the exercise of reasonable diligence, that defendants were infringing its copyrights?" Id. at *15. The statute of limitations in copyright cases is three years, and February 9, 2002 was the date three years before the complaint was filed. 17 U.S.C. § 507(b).

After we granted the motion for a new trial concerning statute of limitations and damages, USI and Haughey filed a motion for partial summary judgment as to the same issues. We granted the motion of USI and Haughey for partial summary judgment on the statute of limitations issue so as to bar damages for more than the three-year period prior to the institution of suit. We also ruled that a new trial must be held to decide damages for the three-year period still in issue. William A. Graham Co. v. Haughey, 484 F. Supp. 2d 334 (E.D. Pa. 2007) ("Graham II").

In February, 2008, a second trial was held. It was limited to the issue of damages for the three-year period immediately preceding the filing of the complaint. The second jury returned a verdict in Graham's favor and awarded damages in the amount of $1.4 million against USI and in the amount of $268,000 against Haughey.

Thereafter, Graham appealed our order granting a new trial, as well as our order entering partial summary judgment in

favor of USI and Haughey on its statute of limitations defense which resulted in limiting the time period for which Graham was entitled to damages. USI and Haughey cross-appealed our determination that the discovery rule, rather than the injury rule, applies to copyright infringement actions. Defendants also challenged on appeal our holding that Graham met its burden of proving a legally sufficient causal connection between the copyright infringement and the damages awarded to Graham.

While the Court of Appeals affirmed our application of the discovery rule with respect to the running of the statute of limitations, it reversed our holding that Graham was dilatory in bringing suit and that it was limited to damages occurring during the three-year period prior to the filing of the complaint. William A. Graham Co. v. Haughey, 568 F.3d 425 (3d Cir. 2009) ("Graham III").

The Court of Appeals remanded the action for a determination of the remaining unresolved issues raised by USI and Haughey after the first trial in their motion for judgment as a matter of law, or in the alternative, for a new trial. Id. at 443. Defendants argued that the jury verdict in June, 2006 was "excessive, resulted in a miscarriage of justice, is against the weight of the evidence presented during the trial in this matter, is unreasonable, and shocks the conscience." In the event the court denied their motion on this ground, defendants asked that the damages awarded to plaintiff be remitted. Defendants further moved for a new trial based on its argument that the "weight of

the evidence does not support the jury's apportionment of Defendants' commissions between those that are attributable to the infringement and those that are attributable to factors other than the infringement." We did not reach these issues in light of our holding on the statute of limitations and our grant of a new trial on damages.

The Court of Appeals also affirmed our denial of USI's and Haughey's motion for judgment as a matter of law with respect to the causation issue.

I.

We provide here only an abbreviated summary of the facts taken in the light most favorable to Graham as greater detail is set forth in both the opinion of our Court of Appeals dated June 5, 2009 and our prior opinion in this matter dated November 21, 2006. Graham III, 568 F.3d 425 (3d Cir. 2009); Graham I, No. 05-612, 2006 WL 3386672 (E.D. Pa. Nov. 21, 2006).

The plaintiff is an insurance brokerage firm that formerly employed one of the defendants, Thomas P. Haughey, as a producer. In 1991, after Haughey and Graham contractually agreed to terminate their employment relationship, Haughey began working for Flanigan, O'Hara, Gentry & Associates, another insurance brokerage firm.[2] Flanigan, O'Hara, Gentry & Associates later became USI.

---

2. In 1997, Flanigan, O'Hara, Gentry & Associates merged with two other companies to form the defendant, USI MidAtlantic, Inc.

The core of the parties' initial dispute stemmed from the use by USI and Haughey of Graham's "Standard Survey and Analysis" and "Standard Proposal" (collectively the "Works"), both of which Graham had copyrighted. The Works, which are descriptions of insurance coverage concepts, were developed by Graham and were used extensively by producers at Graham in their interaction with clients and potential clients. When Haughey left his employ with Graham, he took a copy of the Works with him to USI, and USI and Haughey began using these documents in their sales presentations. Defendants' use of the copyrighted material continued for thirteen years.

The Standard Survey and Analysis and the Standard Proposal are used by producers at Graham at distinct points in the sales process. Producers typically prepare a "survey and analysis" for potential clients. This document comprehensively evaluates the potential client's insurance coverage and risk profile and identifies any coverage deficiencies. Language for the potential client's individual survey and analysis is adopted and tailored from The Standard Survey and Analysis.

If a client or potential client expresses an interest in purchasing insurance coverage through Graham, a "proposal" setting forth the insurance recommendations and price quotes is prepared. As with the survey and analysis, language for the proposal prepared for the individual client is adopted from The Standard Proposal and then tailored accordingly.

In June, 2006, a jury, as noted above, returned the multi-million dollar verdict in favor of the plaintiff. The jury found that USI and Haughey infringed Graham's copyright in the Works and that Graham was not on notice of such infringement prior to February 9, 2002. The $16.5 million and $2.2 million in damages awarded by the jury represented the profits earned by USI and Haughey attributable to the infringement minus what the jury determined were USI's deductible expenses and the percentage of profit attributable to factors other than the copyrighted work.[3]

Now pending before the court is the motion of USI and Haughey for a new trial on damages pursuant to Rule 59 of the Federal Rules of Civil Procedure.

II.

A motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure should be granted "only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006) (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996)). A new trial or remittitur must be granted only if the jury's award "was so irrational as to 'shock the judicial conscience.'" Tormenia v. First Investors Realty Co, Inc., 251 F.3d 128, 138 (3d Cir. 2000); Edynak v. Atlantic Shipping, Inc., 562 F.2d 215, 226 (3d Cir. 1977). This

3. Neither party objected to nor appealed the court's charge regarding the calculation of damages.

necessarily "stringent" standard is designed to "ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" Id. (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1982).

III.

Section 504(b) of the Copyright Act sets forth the damages that a copyright owner may recover for infringement. 17 U.S.C. § 504(b). It states:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

USI and Haughey first argue in support of their motion for a new trial on damages that Graham's expert, Dr. Richard Gering, Ph.D., miscalculated the amount of gross revenue earned by defendants that was reasonably attributable to their infringement of the Works. In short, defendants assert that Dr. Gering's calculation of $31.8 million for gross revenue, which includes $12.2 million earned for USI by Haughey, was improperly inflated because it included commissions earned on renewals of insurance policies where the proposal for the original policy

contained infringing language but either there was no proposal for the renewal or where the proposal for the renewal did not contain infringing language.

The Copyright Act creates a two-step framework under which Graham bore the initial burden to prove gross revenue earned by USI and Haughey that was reasonably related to the infringement. Graham III, 568 F.3d at 442; Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003). The burden on plaintiff in this regard is minimal. Graham I, 2006 WL 3386672 at *5 (citing Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1173 (1st Cir. 1994). In this case, Graham is seeking to recover USI's and Haughey's "indirect profits," that is the profits defendants earned by using the copyrighted material, the Works, to sell another product, insurance. Id. at 795. There is a nexus requirement in indirect profits cases. Id. at 796. Thus, there "must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle with apportionment." Mackie v. Rieser, 296 F.3d 909, 615 (9th Cir. 2002). The burden was on Graham "to prove only that the profits it sought to recover were 'reasonably related to the infringement.'" Graham III, 568 F.3d at 443.

Graham contends that the Court of Appeals affirmed our decision that there was a legally sufficient causal connection between the $31.8 million in gross revenue and the infringement of the Works, and that USI and Haughey are now attempting to have

this court reconsider an issue previously and finally resolved. We agree.

On July 27, 2006, USI and Haughey moved for judgment as a matter of law or for a new trial on the ground that Graham failed to meet its burden of establishing a causal nexus between the copyright infringement and the profits found by the jury. We rejected this argument and held that "Plaintiff has met the statutory threshold to establish a causal connection between the infringement and defendants' profits." Graham I, 2006 WL at *10. Our holding clearly sustained the existence of a nexus between the infringing proposals and the $31.8 million in gross revenue earned by USI.

Our Court of Appeals affirmed this holding. Graham III, 568 F.3d at 442-43. It held that a "reasonable jury could conclude from this evidence that Graham met its initial burden to demonstrate that the infringement contributed to USI's profits." Id. It explained that Graham was only required to prove "that the profits it sought to recover were 'reasonably related to the infringement,' and Graham did so here." Id. at 443. The proof that Graham presented to meet its initial burden was the $31.8 million USI earned in gross revenue.

The instruction of the Court of Appeals regarding the scope of issues to be decided on remand further confirms our conclusion here that plaintiff had established the nexus between infringement of the Works and USI's $31.8 million in gross revenue. It stated:

> First, USI preserved its argument that the jury's apportionment of the defendants' profits between those that were attributable to infringement (and thus recoverable by Graham) and those that were attributable to other factors (and thus not properly part of the damages calculation) was against the weight of the evidence. Second, USI argued that the verdict was excessive. We will therefore remand the case to the District Court to allow it to consider these issues in the first instance.

Id. at 441-42. The Court of Appeals clearly remanded for this court's consideration only those issues raised in defendants' post trial motion, on which this court had not previously ruled. Those issues concern the steps in the damage calculation process which come after the plaintiff establishes USI's gross revenue attributable to the infringement.[4]

Accordingly, we reject the effort of defendants to revisit the question of whether plaintiff has met its minimal burden of establishing that the gross revenue of $31.8 million, including the $12.2 million earned for USI by Haughey, was

---

4. In our November 21, 2006 Memorandum, we stated:

> Finally, defendants claim that a new trial is appropriate because the weight of the evidence does not support the jury's apportionment of defendants' commissions between those that are attributable to the infringement and those that are attributable to factors other than the infringement. Defendants also request a new trial on the basis that the amount of the verdict is excessive. Defendants request in the alternative that the damages awarded to Graham should be remitted. Since the court will grant a new trial on the issues of the applicability of the statute of limitations and of damages, the court will not reach these additional issues." Graham I, 2006 WL 3386672, at *15.

reasonably attributable to the defendants' infringement of the Works. Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949-50 (3d Cir. 1985).

After a plaintiff establishes the infringer's gross revenue attributable to the infringing work, the burden of proof shifts under § 504(b) to the infringer to prove "deductible expenses" and "the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). On these issues, Graham introduced evidence that USI's deductible expenses comprised the 25% in commissions that it paid to its producers. Defendants, who had the burden of proof at this step of the damage calculation, introduced no evidence to contradict that 25% figure. This deduction leaves $23,873,185, or 75% of the $31.8 million, attributable to infringement prior to any allocation. For Haughey, Dr. Gering calculated that he was responsible for $12,252,782 of USI's gross revenue. As a producer, he received 25% of that amount or $3,063,195. The jury awarded $2,297,297 against Haughey, which is 75% of the $3,063,195 in commissions he earned. Defendants contend that the jury verdict, which attributes 70% of the $23,873,185 and 75% of the $3,063,195 to infringement of the Works, is against the great weight of the evidence.

In support of its motion that the 70% and 75% allocations were against the weight of the evidence, USI and Haughey focus on the evidence presented at trial that the personal relationship between the producer and client is the

primary driving force behind a client's decision to purchase insurance through USI. They stress that the lengthy sales process, the pre-proposal investigation and analysis of the client's business, the face-to-face meetings, and the role of the producer as advocate all weigh heavily in the client's decision. In short, they contend that the role of the infringing language in the client's decision to purchase insurance is modest compared to the influence played by the relationship between the producer and client.

USI and Haughey also maintain that the jury's 70% and 75% apportionment is inflated given that a significant portion of the infringing language, or "matches," related to items that were not capable of being purchased by the potential client. They point to the evidence that the sole matching paragraphs in 137 proposals was language describing "Services" that USI provided free of charge to its customers. Another category of "non-revenue matches" was language describing "Additional Recommended Coverages," which described insurance coverage that *could be* purchased by the client but was not.

Defendants also question the jury's 70% and 75% apportionment in light of Dr. Gering's liberal interpretation of which language constituted a "match." Dr. Gering testified that he included in what he characterized as "matches" infringing language consisting of only two or three words. For instance, Haughey and USI highlight Dr. Gering's inclusion of $500,000 in

revenue based solely on matches involving the "Specifications" section of the Works, which often only infringed a few words.

Graham counters that its evidence demonstrated the significant impact of the Works on a client's decision to purchase insurance. William Graham, CEO of The Graham Company, testified that the Works "are probably the most important way that we can establish creditability [sic] with a perspective [sic] client," and "it really lets us show people that [we] understand their business, and we can read an insurance policy." He minimized the personal relationship between the producer and client. He stated:

> businessmen that are in fairly hazardous businesses want more than a good personality or bottle of beer or something like that, they really want to make sure you know what you are doing, and that is why I can get in front of hundreds of business [sic], but maybe couldn't get past that without having these tools that we use to establish and tell a customer, we know what we are doing."

He emphasized the "absolutely essential" role of the Works to his business. According to Mr. Graham, his business "would not have been successful without those documents[.]"[5]

Evidence was also presented to the jury demonstrating the value of the "Services" and "Additional Recommended Coverages" language. Margaret Jones, Graham's vice president and

---

5. Our Court of Appeals commented on the evidence of widespread infringement and use of the Works by USI and Haughey, the importance of the Works to producers seeking to establish credibility with potential clients and their value in the sales process. Graham III, 568 F.3d at 442.

corporate secretary, testified that the "Additional Recommended Coverages" section of a proposal describes important coverages that the client might want to purchase and the type of protection such coverage will give the client. There were approximately 60 paragraphs devoted to Additional Recommended Coverages in the Standard Proposal.

It is significant that defendant Haughey admitted on the witness stand that he included the infringing "Services" language in written proposals to his clients at USI as a means of conveying to the client the benefit the broker provides to them. As the Court of Appeals noted, "Haughey even testified that some clients were convinced to purchase insurance through USI on the basis of the proprosals[.]" Graham III, 568 F.3d at 442. The Court of Appeals further commented on the testimony from USI at trial about the importance of the infringing proposals to their business:

> The jury also heard testimony from USI personnel that the written proposals (including, presumably, those with infringing language) were an important part of the sales process - in fact, Haughey even testified that some clients were convinced to purchase insurance through USI on the basis of the proposals - and that it was USI's practice to review the proposal's contents "page by page" with the client.

Id.

Finally, the jury heard compelling evidence from Graham that the defendants willfully destroyed financial documents relevant to this action. It learned that in October, 2005, after

this lawsuit was filed, USI shredded between twelve to twenty boxes of financial and accounting documents. Linda Gotzon, a customer service representative at USI, conceded that she participated in the shredding of such documents at the Allentown office of USI. She explained that she was directed to destroy all documents older than October, 1995. This destruction of documents took place after this court issued an Order on August 15, 2005 requiring USI to produce proposals generated by producers at USI from 1992 to the present, as well as documents sufficient to show the calculation and breakdown of revenue by year from 1992 to the present.

The jury was given the following spoliation instruction, which was not appealed:

> In this case, you heard evidence that USI MidAtlantic, Inc. destroyed insurance files that were kept at USI MidAtlantic, Inc.'s Allentown office. Where evidence that would properly be part of a case is within the control of or is available to a party and that party fails to produce the evidence without satisfactory explanation, you may draw an inference that, if produced, the evidence would be unfavorable to that party. If you find that the destroyed documents were within the defendants' control, that the defendants disposed of the documents before the plaintiff had an opportunity to inspect them, and that the documents were relevant to this case, that is, they should have been recognized as bearing on an issue that you will be deciding, then you may draw the inference that, if this evidence had been preserved for plaintiff's inspection and presented here in court it would have been unfavorable to the defendants.

Thus, the jury was free to infer, for instance, that the infringing material was used by USI and Haughey in more proposals than it actually produced in discovery and was more significant in generating the sale of insurance and commissions than defendants wanted the jury to believe.

This step of the damage calculation requiring the allocation of profits between those attributable to infringement and those attributable to factors other than infringement is a "highly fact specific" inquiry. Andreas, 336 F.3d at 797 (citing Estate of Vane v. The Fair, Inc., 849 F.2d 186, 190 (5th Cir. 1988)). It is not our function to second-guess the jury. As our Court of Appeals has explained, "the dispositive legal question is whether, given the evidence presented, the jury's award was so irrational as to 'shock the judicial conscience.'" Tormenia, 251 F.3d at 138. A new trial under Rule 59 should be granted "only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" Springer, 435 F.3d at 274. This is a difficult burden for the defendants to meet. Each case is "highly fact specific" so that how a jury or fact finder made a decision in other cases is of limited value. Andreas, 336 F.3d at 797 (citing Estate of Vane v. The Fair, Inc., 849 F.2d 186, 190 (5th Cir. 1988)). In sum, there was ample evidence presented at trial to support the jury's allocation of 70% to 75% of profits to infringement of the Works. We cannot say that the jury's award "shocks the judicial conscience" or that a "miscarriage of

justice" will result if the jury's verdict is allowed to stand. Id.

Accordingly, having now considered the heretofore unresolved grounds that defendants USI MidAtlantic, Inc. and Thomas Haughey have argued, we will deny their motion for a new trial on the issue of damages.